**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Michael Vriens and Nicolas Bardsley, individually, and on behalf of others similarly situated, | ) ) ) ) | Case No.: 2:23-cv-06797-DCN |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | **DEFENDANT D.R. HORTON'S MEMORANDUM IN SUPPORT OF ITS FIRST AMENDED MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS** |
| Tip-Top Roofing & Construction, LLC, Pacific Contractors, LLC, Builders FirstSource – Southeast Group, LLC, Carolina Custom Carpentry, LLC, Quad K, LLC, JJL Construction, LLC, CAC Carpentry, LLC, Alpha Construction of SC, LLC, Good Luck Incorporated, South Atlantic Framing, Inc., SRC Construction, LLC, Jalisco Framing, LLC, Mendoza Construction, LLC, VL Contractor, LLC, 8 Lumber Company, LP, Varanda Contracting Group, Inc., TOMECH, LLC d/b/a Firm Foundation Costal Carolina's, Valim Construction, LLC, Ram Construction SC, LLC, Gold Star Construction, LLC, ProBuild East, LLC, Archer Exteriors, Inc., Americo Roofing Concepts, Inc., Contract Exteriors, LLC, Holy City Exteriors, LLC, SR Construction, LLC, Robert Helms Construction, In., Quick Roofing, LLC, Monarch Company, LLC, Accurate Building Company, LLC, Southend Exteriors, Inc., Above the Sky Roofing, Inc., ABC Supply Co., Inc., SRS Distribution, Inc. f/k/a Superior Distribution, Contract Lumber, Inc., BMC East, LP, US LBM-Professional Builders Supply a/k/a US LBM Holding, LLC a/k/a US LBM, LLC, and D.R. Horton., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |
| D.R. Horton, Inc., | ) ) | |
| Crossclaim Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| Tip-Top Roofing & Construction, LLC, Pacific Contractors, LLC, Builders FirstSource – | ) ) | |

Southeast Group, LLC, Carolina Custom                )
Carpentry, LLC, Quad K, LLC, JJL                     )
Construction, LLC, CAC Carpentry, LLC,               )
Alpha Construction of SC, LLC, Good Luck             )
Incorporated, South Atlantic Framing, Inc.,          )
SRC Construction, LLC, Jalisco Framing, LLC,         )
Mendoza Construction, LLC, VL Contractor,            )
LLC, 8 Lumber Company, LP, Varanda                   )
Contracting Group, Inc., TOMECH, LLC d/b/a           )
Firm Foundation Costal Carolina's, Valim             )
Construction, LLC, Ram Construction SC,              )
LLC, Gold Star Construction, LLC, ProBuild           )
East, LLC, Archer Exteriors, Inc., Americo           )
Roofing Concepts, Inc., Contract Exteriors,          )
LLC, Holy City Exteriors, LLC, SR                    )
Construction, LLC, Robert Helms                      )
Construction, In., Quick Roofing, LLC,               )
Monarch Company, LLC, Accurate Building              )
Company, LLC, Southend Exteriors, Inc.,              )
Above the Sky Roofing, Inc., ABC Supply Co.,         )
Inc., SRS Distribution, Inc. f/k/a Superior          )
Distribution, Contract Lumber, Inc., BMC East,       )
LP, USLBM-Professional Builders Supply               )
a/k/a US LBM Holding, LLC a/k/a US LBM,              )
LLC,                                                 )
                                                     )
    Crossclaim Defendants.       )
                                                     )

    Defendant D.R. Horton Inc. ("D.R. Horton" or "Defendant") submits this Memorandum in Support of its Amended Motion to Compel Arbitration and Stay Proceedings pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and the South Carolina Uniform Arbitration Act, S.C. Code § 15-48-10, et seq. For the reasons set forth herein, the motion should be GRANTED.

## FACTUAL BACKGROUND

    D.R. Horton is one of the largest homebuilders in the country and it has developed a number of subdivisions in South Carolina, including Moore's Landing in Mount Pleasant, South Carolina, where Plaintiff Vriens owns a home. On July 11, 2022, Plaintiff Michael Vriens entered into a contract with D.R. Horton, Inc. (the "Homeowner Contract"), attached as **Exhibit 1**, for the construction and purchase of a home within Moore's Landing located at 1261 Ames Way, Mount

Pleasant, South Carolina 29466 (the "Home"). Plaintiff Nicholas Bardsley is a purported downstream purchaser of a home built by D.R. Horton. All such homes sold to original purchasers include arbitration clauses. Such arbitration clauses also compel downstream purchasers to arbitrate construction defect claims against D.R. Horton. The aforementioned contracts are referred to herein collectively as the "Homeowner Contracts" and the aforementioned homes are referred to herein collectively as the "Homes."

As part of the Homeowner Contracts, Plaintiffs and D.R. Horton mutually agreed to submit all disputes between them to binding arbitration. (Homeowner Contract ¶ 15, Ex. 1). The full arbitration provision provides as follows:

> **Mandatory binding arbitration.** Purchaser and seller shall submit to binding arbitration any and all disputes which may arise between them regarding this agreement and/or the property, including but not limited to any disputes regarding: (a) seller's construction and delivery of the home; (b) seller's performance under any punch list or inspection agreement; and (c) the limited warranty pursuant to section 14 above.

> The arbitration shall take place in the county in which the property is located.

> The proceeding shall be conducted pursuant to the rules of the American Arbitration Association, and to the extent possible, under rules which provide for an expedited hearing.

> The filing fee for the arbitration shall be paid by the party filing the arbitration demand, but the arbitrator shall have the right to assess or allocate the filing fees and any other costs of the arbitration as a part of the arbitrator's final order.

> The arbitration shall be binding and final, and either party shall have the right to seek judicial enforcement of the arbitration award.

> Notwithstanding any other provision herein, any disputes arising under the limited warranty shall be mediated, arbitrated and/or judicially resolved pursuant to the terms, conditions, procedures and rules of that warranty program.

> Notwithstanding the foregoing, seller shall have the right to interplead all or any part of the earnest money into a court of competent jurisdiction as provided for in section 4 herein. Notwithstanding the foregoing, the arbitration provisions of this subsection (b) shall not apply in the event that the dispute relates to a default by the seller under section 16(f) of this agreement.

(Ex. 1 ¶ 15) (formatting altered).

Plaintiffs have now filed a lawsuit complaining of defects in the roof system that allegedly has "non-compliant underlayment and non-compliant underlayment fastener patterns." (Am. Compl. ¶ 23, ECF No. 47). Pursuant to the Homeowner Contracts, this dispute should be submitted to binding arbitration.[1]

Separately, D.R. Horton entered into independent contractor agreements ("ICAs") with each of the Subcontractor Defendants to provide certain labor and materials for the construction of the Home and other homes along Coastal South Carolina.[2] entered These ICAs provide for arbitration of disputes. The ICA arbitration provisions are substantially the same and are as follows:

> 13.1 Disputes. All disputes, whether existing now or arising in the future between them, related in any way to this Agreement, to Contractor's Work, or to any dispute that Owner or Contractor shall have with any third party related to the Work ("Disputes") shall be subject to Alternative Dispute Resolution. These disputes shall include claims related to the construction or sale of any home or property incorporating the Work, including any claims asserting any alleged defects in the Work or any alleged representations and/or warranties, express or implied, relating to the property and/or the improvements…

---

[1] While Plaintiffs' Complaint includes certain allegations regarding a putative class, D.R. Horton maintains that these matters should be submitted to *individual* arbitrations as provided for in the Homeowner Contracts.

[2] Subcontractor Defendants are the other co-defendants to this action: Defendants Tip-Top Roofing & Construction, LLC, Pacific Contractors, LLC, Builders FirstSource – Southeast Group, LLC, Carolina Custom Carpentry, LLC, Quad K, LLC, JJL Construction, LLC, CAC Carpentry, LLC, Alpha Construction of SC, LLC, Good Luck Incorporated, South Atlantic Framing, Inc., SRC Construction, LLC, Jalisco Framing, LLC, Mendoza Construction, LLC, VL Contractor, LLC, 8 Lumber Company, LP, Varanda Contracting Group, Inc., TOMECH, LLC d/b/a Firm Foundation Costal Carolina's, Valim Construction, LLC, Ram Construction SC, LLC, Gold Star Construction, LLC, ProBuild East, LLC, Archer Exteriors, Inc., Americo Roofing Concepts, Inc., Contract Exteriors, LLC, Holy City Exteriors, LLC, SR Construction, LLC, Robert Helms Construction, In., Quick Roofing, LLC, Monarch Company, LLC, Accurate Building Company, LLC, Southend Exteriors, Inc., Above the Sky Roofing, Inc., ABC Supply Co., Inc., SRS Distribution, Inc. f/k/a Superior Distribution, Contract Lumber, Inc., BMC East, LP, US LBM-Professional Builders Supply a/k/a US LBM Holding, LLC a/k/a US LBM, LLC ("Subcontractor Defendants").

13.3 Arbitration. If the parties are unable to resolve any Dispute by agreement, regardless of any other choice of law provision in any underlying contract or this Agreement, the Dispute shall be submitted to binding arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA").[3] All demands for arbitration shall be made before the expiration of the applicable statute of limitations or repose, except that any claim by Owner shall not accrue for purposes of any time limitation for claims until Owner has discovered the claim, or could have discovered it by reasonable diligence. The award rendered by the arbitrator(s) shall be final and binding. A petition to confirm, vacate, modify or correct an award may be filed in any court of competent jurisdiction, but the award may be vacated, modified or corrected only as permitted by the FAA.

ICAs attached as **Exhibit 2**.[4] Pursuant to the Homeowner Contracts and the ICA's, this matter should be submitted to binding arbitration.

## **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides that legal proceedings must be stayed when any such issues in the suit are "referrable to arbitration under an agreement in writing." 9 U.S.C. § 3. "The FAA requires courts to stay a proceeding, pending arbitration, if the court determines that a valid arbitration agreement exists, and that the claims alleged fall within the scope of the arbitration agreement." *LaPoint v. John Wieland Homes & Neighborhoods of the Carolinas, Inc.*, C/A No. 0:08-3553-CMC, 2009 U.S. Dist. LEXIS 146577, at *4, 2009 WL 10684895 (D.S.C. Dec. 1, 2009) (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001); *Whiteside v. Teltech Corp.,* 940 F.2d 99, 102 (4th Cir. 1991)). "Once these criteria are met, the district court has 'no choice but to grant a motion to compel arbitration.'" *Id.* (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002)).

---

[3] At this point, certain ICAs include the additional sentence: "In making this agreement, the parties are waiving their rights to file a lawsuit, to have a jury resolve any dispute between them, and to appeal the decision of the arbitrator to a court of law." (Ex. 2).

[4] D.R. Horton is still in the process of collecting the applicable ICAs. Accordingly, Exhibit 2 may not include ICAs for every Subcontractor Defendant. D.R. Horton will supplement these filings as additional documents are located.

"Because of the well-established federal policy favoring arbitration of disputes, courts must assess the validity and scope of an arbitration agreement with a heavy presumption in favor of arbitration." *Id.* (citing *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.,* 867 F.2d 809, 812 (4th Cir. 1989)). "Accordingly, any doubts concerning the scope of arbitrable issues are resolved in favor of arbitration." *Bernstein v. Pulte Home Co.,* C/A No. 0:19-cv-02805-JFA, 2019 WL 8014404, at *6 (D.S.C. Dec. 23, 2019) (citing *Hill v. PeopleSoft USA, Inc.,* 412 F.3d 540, 543 (4th Cir. 2005)).

When analyzing arbitrability, the "court must first determine whether the parties' agreement is governed by the FAA." *Id.* "A party can compel arbitration under the FAA by establishing (1) a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover that dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the opposing party to arbitrate the dispute." *Id.* (citing *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005)).

After determining that the FAA applies, "courts must apply state law to decide issues of contract formation" when a party challenges the enforceability of the arbitration agreement. *LaPoint*, 2009 U.S. Dist. LEXIS 146577, at *10. "The FAA recognizes arbitration agreements 'may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Sanders v. Savannah Highway Auto. Co.,* 2023 S.C. LEXIS 154, 892 S.E.2d 112, 115 (S.C. 2023) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)).

"However, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Zabinski v. Bright Acres Assocs.,* 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001) (citing *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986)). A court may consider challenges to the

arbitration clause itself, but any challenge to the contract as a whole should only be resolved by an arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

## ARGUMENT

### I.     The Homeowner Contracts are Governed by the FAA.

The Homeowner Contract satisfy all four factors courts analyze to determine whether an arbitration provision is governed by the FAA:

(1) a dispute between the parties;
(2) a written agreement that includes an arbitration provision purporting to cover that dispute;
(3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and
(4) the failure, neglect or refusal of the opposing party to arbitrate the dispute.

*Bernstein*, 2019 WL 8014404, at *6 (citing *Wood*, 429 F.3d at 87).

### Dispute Between the Parties

Plaintiffs entered into the Homeowner Contracts with D.R. Horton. Plaintiffs now complain of defects in the construction of the Home. Plaintiffs refuse to arbitrate. (Pl.'s Mem. Opp. Motion Compel Arbitration (ECF No. 10); Pl.'s Am. Mem. Opp. Motion Compel Arbitration (ECF No. 42)).

### Written Agreement Including Arbitration Provision

The Homeowner Contracts cover disputes over alleged construction defects. In accordance with the South Carolina Uniform Arbitration Act, S.C. Code Ann. § 15-48-10(a), the top of the first page of the Homeowner Contract states the following in bold, underlined, and all capital letters: "**NOTE: THIS CONTRACT PROVIDES FOR MANDATORY BINDING ARBITRATION PURSUANT TO THE SOUTH CAROLINA UNIFORM ARBITRATION ACT, SECTIONS [15]-48-10 ET SEQ., SOUTH CAROLINA CODE OF LAWS (1976, AS**

**AMENDED).**" (Ex. 1, at 1; Ex. 2, at 1; Ex. 3, at 1). The Homeowner Contracts' mandatory arbitration provision expressly covers disputes related to alleged defects in the development and construction of the Homes:

> **MANDATORY BINDING ARBITRATION.** PURCHASER AND SELLER SHALL SUBMIT TO BINDING ARBITRATION ANY AND ALL DISPUTES WHICH MAY ARISE BETWEEN THEM REGARDING THIS AGREEMENT AND/OR THE PROPERTY, INCLUDING BUT NOT LIMITED TO ANY DISPUTES REGARDING: (A) SELLER'S CONSTRUCTION AND DELIVERY OF THE HOME . . . .

(Ex. 1, ¶ 15).

Where an arbitration clause, like the one in this case, provides for the arbitration of "any and all disputes which may arise" between the parties, courts will construe the arbitration clause broadly. *Landers v. FDIC*, 402 S.C. 100, 109-10, 739 S.E.2d 209, 213-14 (2013); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 398 (1967) (describing an arbitration clause as "broad" where the clause provided that "[a]ny controversy or claim arising out of or relating to . . . [the] Agreement . . . shall be settled by arbitration"). The Supreme Court of the United States, the Fourth Circuit Court of Appeals, and the South Carolina Supreme Court have found broad arbitration clauses to be "capable of an expansive reach." *See Prima Paint*, 388 U.S. at 398; *Am. Recovery Corp v. Computerized Thermal Imaging,* 96 F.3d 88, 93 (4th Cir. 1996); *Landers*, 402 S.C. at 109-10, 739 S.E.2d at 213-14.

As such, the language of a broad arbitration clause will apply where there is a "significant relationship" between the claims or disputes and the contract which contains the arbitration clause. *Am. Recovery Corp.,* 96 F.3d at 93. The arbitration clause will in no way be limited "to the literal interpretation or performance of the contract," but instead will "embrace[] every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 321 (4th Cir. 1988); *see also Landers,* 402 S.C. at 111, 739 S.E.2d at 214 ("[U]nder the expansive reach of the FAA a

tort claim need not raise an issue that requires reference to or the construction of some portion of the contract in order to be encompassed by a broadly-worded arbitration clause.").

Accordingly, Plaintiffs' alleged defects in the development and construction of the Homes fall squarely within the Homeowner Contracts' arbitration provision.

**Transactions Involves Interstate Commerce**

The only remaining factor to analyze is whether the transactions involve interstate commerce. The Homeowner Contracts were for the construction of new homes. (Ex. 1). The FAA provides, in relevant part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

"The United States Supreme Court has held that the phrase 'involving commerce' is the same as 'affecting commerce,' which has been broadly interpreted to mean Congress intended to utilize its powers to regulate interstate commerce to its full extent." *Blanton v. Stathos,* 351 S.C. 534, 540, 570 S.E.2d 565, 568 (Ct. App. 2002) (citing *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, (1995)). Congress' broad power in this area thus extends to any transaction "affecting" commerce. *Allied-Bruce*, 513 U.S. at 273-74; *see also Gonzales v. Raich*, 545 U.S. 1, 17 (2005) ("Our case law firmly establishes Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce."). Therefore, for the FAA to apply, a transaction must involve interstate commerce. However, if a transaction involves interstate commerce, the FAA applies even if the parties agree to enforce an arbitration provision under state law, which cannot be used to invalidate an otherwise

valid arbitration provision. *See Dixon v. Pattee,* 442 S.C. 233, 260-61, 898 S.E.2d 158, 172-73 (Ct. App. 2023) (concluding that the whether the parties' agreement was enforceable under the state arbitration act was irrelevant because the court had concluded that the FAA applied).

The South Carolina Supreme Court has held that construction of new homes "manifestly involve[s] interstate commerce, as they involve the construction of new homes built to [an owner's] specifications rather than the purchase of pre-existing homes." *Damico v. Lennar Carolinas, LLC*, 437 S.C. 596, 608, 879 S.E.2d 746, 753 (2022); *see also Bradley v. Brentwood Homes, Inc.* 398 S.C. 447, 458 n.8, 730 S.E.2d 312, 318 n.8 (2012) ("[O]ur appellate courts have consistently recognized that contracts for construction are governed by the FAA"); *Episcopal Hous. Corp. v. Federal Ins. Co.,* 269 S.C. 631, 640, 239 S.E.2d 647, 652 (1977) (observing that new construction implicates interstate commerce because "[i]t would be virtually impossible to construct" the building "with materials, equipment and supplies all produced and manufactured solely within the State of South Carolina.").

The Homeowner Contracts clearly cover both the construction and the sale of the Home. Specifically, Exhibit C "Stages of Construction," contemplates the construction of the Home. As another example, Addendum 8 "Variations in Materials and Components," contains a list of materials to be used to construct the Home, many of which involve interstate commerce. *See, e.g.*, Ex. A at 16, 21. *See generally Episcopal Hous. Corp.,* 269 S.C. at 640, 239 S.E.2d at 652 ("It would be virtually impossible to construct an eighteen (18) story apartment building . . . with materials, equipment and supplies all produced and manufactured solely within the State of South Carolina.").

Specific to Moore's Landing, D.R. Horton sourced materials from out-of-state manufacturers—Whirlpool Appliances (Michigan), CertainTeed Roof Shingles (Pennsylvania), and Carrier HVAC Equipment (Florida). (Aff. Ron Bunner ¶ 6 (Dec. 19, 2023), attached as

**Exhibit 3**.) Various Moore's Landing subcontractors were based outside of South Carolina. For example, 84 Lumber (Pennsylvania) supplied and installed windows and Safe Haven (Missouri) installed security systems. (Ex. 3 ¶ 7.)

Accordingly, the transactions at issue here involve interstate commerce and fall within the FAA, and arbitration must be compelled unless there are common law contract defenses that prevent such enforcement.

## II. The Merger Doctrine Does Not Apply to the Arbitration Provision.

The merger doctrine does not apply to the arbitration provision. Plaintiffs argue that the arbitration provision in the Homeowner Contracts merged out of existence once the deed was executed. This is not the law in South Carolina or other state and federal jurisdictions. *See, e.g., Carlson v. S.C. State Plastering, LLC*, 404 S.C. 250, 260-61, 743 S.E.2d 868, 874 (2013).

The merger by deed doctrine provides that "[t]he execution, delivery, and acceptance of a deed varying from the term of an antecedent contract indicates an amendment of the original contract, and generally the rights of the parties are fixed by their expressions as contained in the deed." *Shoney's, Inc. v. Cooke*, 291 S.C. 307, 311, 353 S.E.2d 300, 303 (Ct. App. 1987) (quoting *Charleston & Western Carolina Ry. Co. v. Joyce*, 231 S.C. 493, 99 S.E.2d 187, 193 (1957)). The intent of the merger doctrine is not to extinguish agreements outside of these areas such as arbitration of future disputes, which everyone knows are bound to arise. Instead, agreements that are not intended to be merged in a deed are not merged into the deed. *Hughes v. Greenville Country Club*, 283 S.C. 448, 450-51, 322 S.E.2d 827, 828 (Ct. App. 1984). South Carolina and other jurisdictions have refused to apply the doctrine of merger to arbitration provisions in real estate purchase contracts. *See, e.g., Bushman Inv. Props. v. DBSI E-470 E. Llc*, Civil Action No. 09-cv-00674-MSK-KLM, 2010 U.S. Dist. LEXIS 21011 (D. Colo. Feb. 15, 2010); *Dress Co. v. Osburg*, 144 S.W.3d 831 (Ky. Ct. App. 2003); *Lakeway Homes, Inc. v. White*, No. 05-15-01455-CV, 2016

Tex. App. LEXIS 6718, at *14-15 (Tex. App. June 23, 2016); *Thomas v. Sloan Homes*, LLC, 81

So. 3d 309, 312-14 (Ala. 2011); *Engle Homes, Inc. v. Jones*, 870 So. 2d 908 (Fla. Dist. Ct. App.

2004); *Stanford Dev. Corp v. Stanford Condo. Owners Ass'n*, 285 S.W.3d 45 (Tex. App 2009).

The Kentucky Court of Appeals' case of *Dress Co.* involved a contract for the construction

and purchase of a new home from a multi-state developer and builder of residential communities.

After the purchaser took possession of their new home, they installed an above-ground pool. The

company informed them that the pool violated restrictive covenants, and the purchaser filed suit.

The company sought to enforce the arbitration clause in the purchase agreement. The trial court

ruled that the purchase agreement had been merged into the deed, but on appeal the Kentucky

Court of Appeals reversed, holding that the arbitration clause survived closing. 144 S.W.3d at 832.

The court first explained the merger doctrine:

> The doctrine [of merger] applies to covenants pertaining to title, possession,
> quantity, or emblements of the property, the covenants commonly addressed in
> deeds. Covenants in the antecedent contract that are not commonly incorporated in
> the deed, and that the parties do not intend to be incorporated, are often referred to
> as collateral agreements. The merger doctrine does not apply to collateral
> agreements.

*Dress Co.,* 144 S.W.3d at 832-833. The court then found that the arbitration agreement was

collateral to the property transfer as "[i]t had nothing to do with the title, possession, quantity, or

emblements of the property." *Id.* at 833. Moreover, as noted by the court:

> [I]t is reasonable to suppose that the parties intended post-closing performance of
> [the arbitration] clause; disputes, after all, frequently arise after closing. The trial
> court erred, therefore, when it applied the merger doctrine to the arbitration
> agreement.

*Id.*

In *Bushman*, the United States District Court for the District of Colorado similarly

explained that merger does not apply to agreements in the contract that do not relate to title,

quantity, possession, or emblements of the land and are not necessarily satisfied by the execution

and delivery of the deed. *Bushman*, 2010 U.S. Dist. LEXIS 21011, at *15-16. (citing *Lazy Dog Ranch v. Telluray Ranch Corp.*, 923 P.2d 313, 318 (Colo. App. 1996) *and Coe v. Crady Davis Corp.*, 60 P.3d 794, 796 (Colo. App. 2002)). As explained by the court in Bushman when addressing the merger doctrine and arbitrability in the context of a commercial real estate purchase agreement:

> [T]he arbitration agreement is not a covenant relating to the title, quality, possession or emblements of the property itself; it is, quite obviously, not an agreement that can be satisfied by the execution and delivery of the deed. Thus, at least under Colorado law, it did not merge into the terms of the deed, but rather remains enforceable.

*Id.* at *16 (emphasis added).

Similarly, in *Lakeway Homes, Inc.,* the Texas Court of Appeals reversed a trial court's order denying the defendant's motion to compel arbitration. 2016 Tex. App. LEXIS 6718. Following residential home construction and closing, a dispute arose concerning a stucco wall constructed in the home. The construction contract contained an arbitration provision; however, the plaintiff argued that because there was no arbitration provision in the closing documents or the deed, it was unenforceable under the merger doctrine. As noted by the court, the arbitration provision creates rights collateral to and independent to the sale of the property. *Id.* at *15. Therefore, it was not merged out of existence by subsequent deeds or other closing documents. *Id.*

The arbitration provision at issue in *Lakeway Homes,* similar to the arbitration provision here, did not contain specific survival language. *See id.* at *2-4, n.2.

The Supreme Court of Alabama has also rejected this argument in the residential home purchase context. As noted by the Alabama Supreme Court in *Thomas*:

> The real merger-exception rule in the sale of realty is that "where the antecedent contract contains provisions imposing obligations upon the vendor other than those relating to title or possession, and collateral thereto such collateral provisions will be held to survive the deed." Where the antecedent contract contains an agreement to build, repair or construct as well as an agreement to convey, it is too plain to debate that the actual transfer of the deed (which passes only legal title) is "only a

> part performance of the provisions of the antecedent contract," and that the agreements to build or construct "come under the collateral agreement theory" and hence are clearly exempted from the operation of merger in the first place. The practice of calling such a dual-purpose antecedent contract a mere "sales contract," so as to effect its entire merger into the deed, ignores the true nature of the agreement and ignores modern business reality with the result of substantial injustice to uncounted home buyers in this state.

*Thomas*, 81 So. 3d at 313 (citations omitted).

The rational basis for the merger rule is that where parties enter into a final contract, all prior negotiations, understandings, and agreements "on the same subject" are merged into the final contract and are accordingly extinguished. Where the antecedent contract or contracts clearly provide for agreements or stipulations to build or construct as well as an agreement to convey, it is plain that the actual transfer of the deed, which is performance only of the agreement to convey, does not extinguish any duties and obligations arising out of the agreement to build. *Id.* The arbitration provision at issue in *Thomas*, like here, also did not include specific survivability language. *See id.* at 310.

In *Cohen v. E.F. Hutton & Co.*, 1989 U.S. Dist. LEXIS 8127, 1989 WL 82010 (N.D. Ill. 1989), the court laid out a further requirement for applying the merger doctrine. The court explained that in order for the doctrine of merger to apply, the second agreement must "embrace the same terms encompassed by the first: "[I]t is well-settled that where provisions in the former contract are not embraced in the latter, the terms in the first agreement remain unaffected and controlling." *Id.* at *6 (citing *Alton Banking & Trust Co. v. Schweitzer*, 121 Ill. App.3d 629, 460 N.E.2d 105, 108 (1984) and *Harris Trust & Savings Bank v. Chicago Title & Trust Co.*, 84 Ill. App.3d 280, 405 N.E.2d 411 (1980)). The court, faced with two agreements between the plaintiff and the defendant, held that since the second contract did not discuss arbitration of disputes, the earlier agreement was binding. *Id.*

South Carolina courts follow the same logic as to when the merger doctrine applies and have applied the merger doctrine in cases involving possession and title. *See Epworth Children's Home v. Beasley*, 365 S.C. 157, 616 S.E.2d 710 (2005) (applying the merger doctrine in a case involving a trust and possession); *Hughes v. Greenville Country Club*, 283 S.C. 448, 322 S.E.2d 827 (Ct. App. 1984) (applying the merger doctrine in a case involving possession and use conditions).

Additionally, the South Carolina Court of Appeals recently issued two opinions that send a clear message to litigants and courts alike that South Carolina's appellate courts support arbitration, will enforce the Federal Arbitration Act, and will not follow a small string of trial court orders refusing to give effect to valid arbitration provisions. *See Mart v. Great S. Homes, Inc*., 441 S.C. 304, 893 S.E.2d 360 (Ct. App. 2023); *Dixon v. Pattee,* 442 S.C. 233, 898 S.E.2d 158 (Ct. App. 2023).

As these numerous courts have observed, the merger doctrine applies only to issues of title, possession, quantity, or emblements (growing crops) of the property and therefore does not apply to the arbitration provision at issue in this matter.

**Exceptions to the Merger Doctrine**

Even if the merger doctrine does apply to the arbitration provision, there are exceptions to its application in this instance. There are at least three exceptions to the merger rule. These exceptions are set out in *Dudek v. Commonwealth Land Title Ins. Co*., 466 F.Supp.3d 610 (D.S.C. 2020) and *Shoney's, Inc. v. Cooke*, 291 S.C. 307, 353 S.E.2d 300 (Ct. App. 1987).

The first exception is inapplicable to the present case (mistake or fraud in the execution of the deed). The second exception is that the party denying merger can enforce the provisions of a pre-deed contract if it proves by clear and convincing evidence that merger was not intended. *Hughes*, 283 S.C. at 451, 322 S.E.2d at 828.

In *Carlson v. S.C. State Plastering, LLC*, 404 S.C. 250, 743 S.E.2d 868 (2013), the court faced the identical issues presented in the present case. The *Carlson* court applied the second "intent" exception to the merger rule, in part, to defeat the plaintiffs' argument that the arbitration clause was merged into the deed. The plaintiff homeowners in that case executed a purchase agreement that included an arbitration clause. The deed that was subsequently issued did not provide for arbitration. The plaintiffs argued that the doctrine of merger precluded arbitration of their claims. Specifically, the plaintiffs argued that because the deed, which contained no arbitration clause, superseded the purchase agreement, their claims were not subject to arbitration. *Id.* at 260, 743 S.E.2d at 874. The court disagreed, finding that the purchase agreement expressly provided that the agreement is not deemed merged into the deed. *Id.* at 261, 743 S.E.2d at 874.

Here, the Homeowner Contracts contain a number of provisions that similarly evidence the parties' intent not to merge the terms of the Homeowner Contracts with the deed. (Ex. A ¶¶ 14 (warranty), 15 (arbitration of future disputes), 18 (post-closing remedies)). Most significantly, finding merger would mean that D.R. Horton's obligation to provide the Plaintiffs a ten-year warranty would also be merged out of existence, which the parties could not have intended. (Ex. A ¶ 14). Accordingly, the terms of the agreement clearly indicate that that the parties did not intend for the arbitration provision to be superseded by the deed.

The third exception to the doctrine of merger is the "collateral agreement" exception. Under the collateral agreement exception, the party opposing merger must show that the agreement in question is independent and distinct from the main contract, is consistent with the main contract, and is such an agreement as the parties could not reasonably be expected to embody in the main contract but would naturally make as a separate agreement. *Shoney's*, 291 S.C. at 312, 353 S.E.2d at 304. In addition, "[w]here a deed constitutes only part performance of a preceding contract, other distinct and unperformed provisions of the contract are not merged in the deed." *New*

*Prospect Area Fire Dist. v. New Prospect Ruritan Club*, 311 S.C. 402, 405, 429 S.E.2d 791, 792 (1993).

In the present case, the deed constituted only the part of the agreements that related to the construction and purchase of the property, and the deed does not cover any aspects of construction, dispute resolution post-closing, or warranties to be provided by D.R. Horton and the manufacturers. The arbitration provision is a separate agreement regarding disputes under the Homeowner Contracts. It is also consistent with the Homeowner Contracts' terms. Finally, it is such an agreement as the parties could not reasonably be expected to place into the deed. It is difficult to imagine a deed incorporating the language of an arbitration provision related to home construction or the warranty obligations of the builder.

In sum, there is no authority, either in South Carolina or otherwise, that under the specific facts found in the present case, the merger doctrine should apply to deny arbitration under the Federal Arbitration Act or South Carolina Arbitration Act. For these reasons, arbitration should not be precluded due to the merger doctrine.

## III.     The Arbitration Provision is Enforceable.

The arbitration clause in the Homeowner Contracts is enforceable because there are no general contract defenses that would invalidate the agreement to arbitrate.

After determining that the FAA applies, "courts must apply state law to decide issues of contract formation" when a party challenges the enforceability of the arbitration agreement. *LaPoint*, 2009 U.S. Dist. LEXIS 146577, at *10. "The FAA recognizes arbitration agreements 'may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Sanders*, 2023 S.C. LEXIS 154, 892 S.E.2d at 115 (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)).

Any challenge to arbitration based on a contract defense must be made specifically to the arbitration clause and not to the contract generally because arbitration clauses are separable. *LaPoint*, 2009 U.S. Dist. LEXIS 146577, at *20 ("[I]t is well established that if a claim calls into question not the fairness of the arbitration process specifically, but rather the validity of the entire contract, the arbitrator must rule on the dispute.) (citing *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001). A party cannot avoid arbitration through rescission of an entire contract when there is no independent challenge to the arbitration clause itself. *Carolina Care Plan, Inc. v. United HealthCare Servs.*, 361 S.C. 544, 551, 606 S.E.2d 752, 755 (2008). There must be fraud in the inducement of the arbitration agreement to avoid arbitration of the contract. *Id.* (citing *South Carolina Pub. Serv. Auth. v. Great Western Coal (Kentucky), Inc.,* 312 S.C. 559, 562-63, 437 S.E.2d 22, 24 (1993)). "Fraud as a defense to an arbitration clause must be fraud *specifically as to the arbitration clause and not the contract generally.*" *Id*. (emphasis in original).

### a.   The Arbitration Provision Is Not Unconscionable.

The Homeowner Contracts' arbitration provision is not unconscionable. "In South Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Smith,* 417 S.C. at 49, 790 S.E.2d at 4 (quoting *Simpson v. MSA of Myrtle Beach, Inc.,* 373 S.C. 14, 24-25, 644 S.E.2d 663, 668 (2007)). Inequity of bargaining power is not "on its own, sufficient basis to invalidate an arbitration agreement." *LaPoint,* 2009 U.S. Dist. LEXIS 146577, at *11 (citing *Munoz v. Green Tree Fin. Corp.,* 343 S.C. 531, 541, 542 n.5, S.E.2d 360, 365 n.5 (2001)). "In conducting an unconscionability inquiry, courts may only consider the provisions of the arbitration agreement itself, and not those of the whole contract." *Smith,* 417 S.C. at 48, 790 S.E.2d at 4.

The Homeowner Contracts are different from the contract at issue in *Smith v. D.R. Horton*. In *Smith v. D.R. Horton, Inc.,* the home purchase agreement contained a section titled "Warranties and Dispute Resolution" containing ten subparagraphs that not only addressed arbitration between the parties, but also the various warranties and warranty exclusions. *Smith,* 471 S.C. at 53-59, 790 S.E.2d at 6-9 (J. Kittredge, dissenting) (restating the provisions in their entirety). The parties, and the justices, disagreed on whether these ten paragraphs should be read together as the "arbitration provision," or whether only the specifically labeled arbitration subparagraph (g) should be reviewed for arbitrability but ultimately a majority of the court determine it should be read as a whole. *Id.* at 48-49, 790 S.E.2d at 3-4. The arbitration subparagraph (g) was not challenged by the homeowner and not found unconscionable by the court. *Smith,* 471 S.C. at 59, 790 S.E.2d at 10 (J. Kittredge, dissenting) ("[I]n opposing arbitration, the Smiths do not challenge any provision of subparagraph (g) titled 'MANDATORY BINDING ARBITRATION.'"). Rather, the court determined that a separate subparagraph (i) that disclaimed implied warranty claims and prohibited monetary damages was one-sided and oppressive and therefore unconscionable. *Id.* at 50, 790 S.E.2d at 5. Because the entire Warranty and Dispute Resolution section was read together, the one offending subparagraph invalidated the entirety of the section, including the requirement to submit all disputes to binding arbitration. *Smith,* 417 S.C. at 50, 790 S.E.2d at 4-5.

Here, the arbitration clause is a standalone provision found at Section 15 of the Homeowner Contract, titled "**MANDATORY BINDING ARBITRATION**." Warranties and related disclaimers are separately located in section 14. Therefore, unlike the combined warranty and dispute resolution section *Smith* that the court determined must be read together, the arbitration provision in the Homeowner Contracts is contained in a standalone section and should be reviewed as such and is severable from any other language of the Homeowner Contracts under *Prima Paint*. *See generally, Prima Paint,* 388 U.S. at 398. This is precisely how the South Carolina Supreme

Court distinguished the arbitration provision in *Damico* from *Smith*. *Damico*, 437 S.C. at 610, 879 S.E.2d at 754 (distinguishing a homeowner contract with separate warranty and arbitration sections from the combined Warranties and Dispute Resolution in *Smith* and finding that the separate arbitration section should be analyzed as a standalone provision).

The questions are: (1) whether Plaintiffs lacked meaningful choice and the arbitration provision is one-sided; and (2) whether the terms of the arbitration provision "are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Smith*, 417 S.C. at 49, 790 S.E.2d at 4. Both questions must be answered in the negative.

First, Plaintiffs had a meaningful choice to enter the Homeowner Contract. Plaintiffs were free to purchase a home from another builder, purchase a pre-existing home, or purchase no home at all. Plaintiff freely chose to assent to D.R. Horton's contractual terms, including arbitration of construction disputes. There is nothing inherently unfair about this bargaining process. Arbitration is binding on both Plaintiffs and D.R. Horton, it is not one-sided and nothing in the substance of the arbitration provision is one-sided.

Second, the terms of the arbitration provision are not "so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Smith,* 417 S.C. at 49, 790 S.E.2d at 4. In relevant part, the arbitration provision: (1) binds both D.R. Horton and Plaintiff to arbitration for construction defect disputes; (2) provides for arbitration in Plaintiff's home county; (3) provides for an expedited hearing schedule; and (4) gives the arbitrator complete discretion to assess the filing fees and costs against D.R. Horton. There is nothing so oppressive about these terms such that no fair and honest person would accept them. To the contrary, these are reasonable and customary terms in an arbitration agreement and should be enforced.

**b. The South Carolina Court of Appeals' Decisions in *Mart* and *Dixon* Support Arbitration of the Homeowner Contract.**

In September 2023, the South Carolina Court of Appeals reversed the lower court and ordered arbitration in a home construction putative class action, *Mart v. Great Southern Homes, Inc.,* 441 S.C. 304, 893 S.E.2d 360 (Ct. App. 2023). In *Mart,* the court enforced an arbitration clause in a home construction contract between a homeowner and a large homebuilder. The purchase agreement in *Mart* contained both an arbitration clause and limited warranties and disclaimers that are very similar to the D.R. Horton clauses at issue in this case:

> **ARBITRATION**: Any dispute between the parties hereto arising out of this contract, related to the contract or the breach thereof, including without limitation, disputes relating to the property, improvements, or the condition, construction or sale thereof and the deed to be delivered pursuant hereto, shall be resolved by final and binding arbitration before three (3) arbitrators, one selected by each party, who shall mutually select the third arbitrator pursuant to the <u>South Carolina Uniform Arbitration Act [(SCUAA)]</u>.

> LIMITED WARRANTY: The Seller shall furnish the Purchaser, at closing, with a limited warranty issued by a warranty company approved by the South Carolina Real Estate Commission. A sample copy of the warranty shall be available for inspection during reasonable business hours prior to closing at the offices of the Seller. This limited warranty shall warrant workmanship for One (1) year and warrant the structure itself for Ten (10) years from date of closing. Said limited warranty shall be incorporated in the deed delivered at closing. Purchaser acknowledges that said limited warranty is not a maintenance agreement. FOR QUALITY ASSURANCE PURPOSES WARRANTY VISITS MAY BE VIDEO W/AUDIO TAPED.

> **This Limited Warranty issued to the Purchaser shall be in lieu of all other warranties, express or impli[e]d, any warranty of habitability, suitability for residential purposes, merchantability, or fitness for a particular purpose is hereby excluded and disclaimed. Seller shall in no event be liable for consequential or punitive damages of any kind. There is no warranty whatsoever on trees, shrubs, grass, vegetation or erosion caused by lack thereof, nor on subdivision improvements, including but not limited to, streets, road[s], sidewalks, sewer, drainage or utilities. Purchaser agrees to accept said limited warranty in lieu of all other rights or remedies, whether base[d] on contract or tort**.

*Mart,* 441 S.C. at 307, 893 S.E.2d at 361.

The lower court read the above arbitration clause and a separate warranty arbitration clause together and ruled that conflicting language in the two clauses indicated a lack of mutual consent

to arbitration. *Id.* at 311–12, 893 S.E.2d at 364. The *Mart* court reversed, first noting the well-established rule that "[a]rbitration clauses are separable from the contracts in which they are imbedded" and "[e]ven if the overall contract is unenforceable, the arbitration provision is not unenforceable unless the reason the overall contract is unenforceable specifically relates to the arbitration provision." *Id.* at 312-13, 893 S.E.2d at 364 (quoting *Huskins v. Mungo Homes, LLC*, 439 S.C. 356, 366, 887 S.E.2d 534, 539-40 (Ct. App. 2023) (internal quotation marks omitted)). Pursuant to *Damico*, the court of appeals concluded that the lower court erred in reading the arbitration clause in the purchase contract and the arbitration clause in the warranty together, holding that "controlling case law does not permit us to consider the language of the separate limited Warranty or the propriety of the waiver of implied warranties in analyzing the standalone arbitration language of the Sales Contract." *Id.* at 315, 893 S.E.2d at 365. Because Mart "did not separately challenge the standalone arbitration provision in the [sales contract] as unconscionable or lacking material terms, [the court was] handcuffed with respect to Mart's challenge to the validity of the waiver of implied warranties." *Id.* at 316, 893 S.E.2d at 366. As such, the lower court erred in considering terms outside of the arbitration clause to deny arbitration.

The court then reviewed the arbitration clause as compared to other clauses in residential home purchase agreements that have been held unconscionable. The court noted that in *Damico,* the arbitration clause gave the right to arbitrate to the builder at its sole election. The court also looked at the arbitration clause in *Smith,* in which the D.R. Horton clause was intertwined with the warranty clause in the same paragraph, with no severability clause. Next, the court examined the arbitration clause in *Huskins*, noting that it contained a provision that shortened the statutory limitations period to ninety days, which that court struck down.[5] *Id.* at 318, 893 S.E.2d at 367.

---

[5] In *Huskins*, the court of appeals found this provision to be unconscionable, but the court concluded it could be severed from the arbitration clause and therefore upheld the trial court's decision to compel arbitration. 439 S.C. at 371, 887 S.E.2d at 542. The South Carolina Supreme

Ultimately, the court held that the standalone arbitration clause at issue in *Mart* was enforceable because it did not contain any provisions that South Carolina courts have held to be unconscionable.

Similarly, in *Dixon*, the plaintiffs argued the arbitration provision was an adhesion contract and unconscionable. 442 S.C. at 261, 898 S.E.2d at 173. However, the court noted that an adhesion contract is not unconscionable unless it *also* contains unfair and oppressive terms. *Id.* at 262–63, 898 S.E.2d at 173–74; *see also, e.g.*, *Damico*, 437 S.C. at 614, 879 S.E.2d at 756 (noting that "an adhesion contract with fair terms is certainly not unconscionable"). The plaintiffs did not cite any provisions in the agreement that were oppressive, and therefore the court concluded that they had abandoned the argument on appeal. *Dixon*, 442 S.C. 263, 898 S.E.2d at 173–74.

Here, the Homeowner Contracts' standalone arbitration clause does not provide for arbitration at D.R. Horton's sole election; it is not combined with the warranty provision such that the two cannot be separated easily; and it does not contain any other terms that are oppressive or one-sided. Rather, like the clause in *Mart*, the present arbitration clause is fair and even-handed, simply providing for arbitration to be agreed to by both parties and providing for which claims should be arbitrated. Under these standards, D.R. Horton's arbitration clause should stand.

### c. **Recent South Carolina Circuit Court Opinions Enforced an Identical Provision.**

More recently, two South Carolina circuit court judges granted motions to compel

---

Court recently reversed this decision. *Huskins v. Mungo Homes, LLC*, Op. No. 28245 (S.C. Sup. Ct. filed Dec. 11, 2024), attached as **Exhibit 8**. The court held that the provision shortening the statute of limitations was void and illegal against public policy and—unlike the court of appeals—refused to sever it from the agreement because it was a material term in an adhesion contract. *Id.* at 3–6.

The Homeowner Contracts contain no such illegal terms, so this ruling is of no moment to the present case.

arbitration in construction defect cases involving arbitration provisions identical to the one at issue in this case.

In March 2024, Judge Diane S. Goodstein considered the enforceability of the arbitration provision in D.R. Horton's homeowner contract in a putative class action filed in Berkeley County. (Order Granting D.R. Horton's Mot. Compel Arbitration, *Tyler v. D.R. Horton, Inc.*, No. 2022-CP-08-02548, slip op. at 2–3 (S.C. Ct. Com. Pl. Mar. 4, 2024), attached as **Exhibit 4**.) The plaintiffs argued against arbitration on grounds of unconscionability and the merger doctrine, among others. However, Judge Goodstein ordered arbitration and confirmed that decision in a June 2024 order denying a motion to reconsider. (Ex. 4 at 5; Order on Mot. Reconsider, *Tyler v. D.R. Horton, Inc.*, No. 2022-CP-08-02548, slip op. at 2–3 (S.C. Ct. Com. Pl. June 24, 2024), attached as **Exhibit 5**.) Judge Goodstein rejected all of the plaintiffs' arguments against arbitration and specifically ruled that the merger doctrine did not apply to merge the arbitration clause out of existence. (Ex. 4 at 3–5.)

D.R. Horton later made similar arguments in seeking a motion to compel arbitration in a Richland County case. (*See* Def.'s Mem. in Supp. Mot. Stay & Compel Arbitration, *Hill v. D.R. Horton, Inc.* (Sept. 20, 2024), attached as **Exhibit 6**.) D.R. Horton argued, among other things, that the arbitration provision was not unconscionable and the merger doctrine did not apply. (*Id.* at 10–20.) Judge B. Alex Hyman agreed and in October 2024 granted the motion to compel arbitration. (Form 4 Order Granting Def.'s Mot. Stay & Compel Arbitration, *Hill v. D.R. Horton, Inc.*, No. 2024-CP-40-03666 (S.C. Ct. Com. Pl. Oct. 3, 2024), attached as **Exhibit 7**.) Although the decision was a form order without discussion, it is apparent that Judge Hyman accepted D.R. Horton's arguments in favor of the arbitration provision's enforceability.

Judge Hyman's and Judge Goodstein's orders are just the latest in a string of decisions

from courts that have enforced arbitration provisions and granted motions to compel arbitration.[6]

Faced with similar circumstances, this Court should likewise find the arbitration agreement in the

Homeowner Contracts to be enforceable and compel arbitration.

## IV.     The Arbitration Provision Is Enforceable Against Subsequent Purchasers.

---

[6] *See, e.g.*, *Purcell Constr., Inc. v. D.R. Horton, Inc.*, No. 0:22-cv-00391-TLW, 2022 U.S. Dist. LEXIS 237558, at *1–*5 (D.S.C. Apr. 20, 2022) (compelling arbitration in a dispute between D.R. Horton and a general contractor); *Bernstein v. Pulte Home Co.*, No. 0:19-cv-02805-JFA, 2019 U.S. Dist. LEXIS 227884, at *6–*14 (D.S.C. Dec. 23, 2019) (granting motions to stay and compel arbitration where the agreement involved the construction of new homes and therefore was subject to the FAA); *Rogers v. Clayton Homes Florence*, No. 4:19-cv-00570-DCC, 2019 U.S. Dist. LEXIS 209540, at *5, *8–*9 (D.S.C. Dec. 5, 2019) (finding the elements necessary to compel arbitration under the Fourth Circuit's four-factor test —a dispute, arbitration agreement that covers the dispute, relationship to interstate or foreign commerce, and failure of a party to arbitrate—were present and therefore compelling arbitration); *Nat'l Home Ins. Co. v. Bridges*, 142 F. Supp. 3d 425, 432–33 (D.S.C. 2015) (concluding that a dispute arising under a warranty affected interstate commerce and was subject to the FAA where the home under the warranty was in South Carolina, the warranty application was mailed to Georgia, and claims under the warranty were adjusted from an office in Colorado); *One Belle Hall Prop. Owners Ass'n v. Trammell Crow Residential Co.*, 418 S.C. 51, 63–65, 791 S.E.2d 286, 293–94 (Ct. App. 2016) (holding that an arbitration agreement in a warranty provided by a shingles manufacturer was not unconscionable and unenforceable; any unconscionable provisions in the arbitration agreement were severable; any unconscionable provisions in other portions of the warranty could not be read into the arbitration agreement; and the agreement fostered an unbiased decision by a neutral decisionmaker); *Carlson v. S.C. State Plastering, LLC*, 404 S.C. 250, 256–62, 743 S.E.2d 868, 872–75 (Ct. App. 2013) (concluding that the defendants did not waive arbitration, the arbitration provision was not unconscionable and did not merge with deed, and the plaintiff's claims fell within the scope of the arbitration agreement); *Santoro v. Nvr, Inc.*, No. 2019-CP-32-03459, 2020 S.C. C.P. LEXIS 8227, at *8–*11 (Dec. 9, 2020) (construing an arbitration provision broadly and therefore concluding that it applied to the parties' dispute); *Didio v. CMH Homes*, No. 2019-CP-26-02119, 2019 S.C. C.P. LEXIS 4471, at *4–*7 (Oct. 8, 2019) (concluding that a dispute resolution agreement requiring arbitration covered all of the plaintiff's claims, was not unconscionable, and was enforceable); *Clubs at Cherokee Valley Prop. Owners' Ass'n v. SK Builders, Inc.*, No. 2018-CP-23-05074, 2019 S.C. C.P. LEXIS 5612, at *3–*4 (Aug. 30, 2019) (compelling arbitration where the property owners' association's claims arose out of covenants that required disputes be resolved in binding arbitration).

Although Plaintiffs may argue that the putative class includes subsequent purchasers, such as Plaintiff Nicholas Bardsley, that are not signatories to a homeowner contract, the arbitration provision is enforceable against them.

It has been long settled that "[t]he obligation and entitlement to arbitrate 'does not attach only to one who has personally signed the written arbitration provision.'" *Washington Square Sec., Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 2004) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir.2000)). "Well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Int'l Paper Co.*, 206 F.3d at 416–17.

In *Dixon v. Pattee*, 442 S.C. 233, 898 S.E.2d 158 (Ct. App. 2023), the South Carolina Court of Appeals reiterated that a non-signatory to an arbitration clause can be held subject to arbitration when it seeks benefits from a contract providing for arbitration. *Id.* at 256–59, 898 S.E.2d at 170–72. As the court noted, a plaintiff "may not rely on [a] contract when it works to its advantage, and repudiate it when it works to its disadvantage." *Id.* at 258, 898 S.E.2d at 171 (citation omitted). Therefore, when a plaintiff asserts a claim that arises *only by virtue of a contract*, he is estopped from avoiding the effect of the arbitration provision in that contract. *Id.* Simply put, Plaintiffs cannot have their cake and eat it, too.

In *Dixon*, the court held that while the plaintiffs were not parties or signatories to the relevant agreement, because they relied on the warranty that was contained in that agreement in bringing their claims, they were bound by the arbitration provision that was also in that agreement. *Id.* at 258–59, 898 S.E.2d at 171. Here, the Plaintiffs allege D.R. Horton owed Plaintiffs a duty to "specify, supply, and install the Roofing on the class homes in accordance with applicable building codes and in a careful, and workmanlike manner, free from defects." (Am. Compl., ¶ 60, ECF No.

47). These duties only arose out of D.R. Horton's contract with the original purchasers, and, without that contract there would be no such claims. Thus, it is clear that any putative class member who is a subsequent purchaser is seeking benefits from certain contractual provisions and therefore cannot avoid the arbitration required by other provisions. This situation is precisely what the Court confronted in *Dixon* when it enforced the builder's arbitration clause against the subsequent purchaser. 442 S.C. at 258–59, 898 S.E.2d at 171–72.

## <u>CONCLUSION</u>

The Homeowner Contracts provide for arbitration of matters like those in this case, and both federal and South Carolina courts strongly favor arbitration. Moreover, the arbitration clause is clearly valid under the FAA and South Carolina Uniform Arbitration Act because it complies with S.C. Code Ann. § 15-48-10(a). Finally, there are no contract defenses that would invalidate the arbitration agreement in the Homeowner Contracts. Accordingly, this matter should be submitted to arbitration. D.R. Horton hereby respectfully requests this Court grant the Motion and compel the parties in this matter to submit to binding arbitration.

**[signature page follows]**

**KENISON, DUDLEY & CRAWFORD, LLC**

s/ David L. Paavola
John T. Crawford, Jr. (Fed. Bar # 9066)
Kimila L. Wooten (Fed. Bar # 5525)
David L. Paavola (Fed. Bar #11713)
W. Jacob Henerey (Fed. Bar # 12724)
Amelia M. Farmer (Fed. Bar #13891)
325 W McBee Ave, Suite 301
Greenville, South Carolina 29601
Telephone: (864) 242-4899
crawford@conlaw.com
wooten@conlaw.com
paavola@conlaw.com
henerey@conlaw.com
farmer@conlaw.com

*Counsel for D.R. Horton, Inc.*

December 18, 2024
Greenville, SC