**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

MICHAEL VRIENS and NICHOLAS BARDSLEY, *individually, and on behalf of all others similarly situated,*

Plaintiffs,

vs.

TIP-TOP ROOFING & CONSTRUCTION, LLC; PACIFIC CONTRACTORS, LLC; PACIFIC CONTRACTORS, INC.; BUILDERS FIRSTSOURCE – SOUTHEAST GROUP, LLC; CAROLINA CUSTOM CARPENTRY, LLC; QUAD K, LLC; JJL CONSTRUCTION, LLC; CAC CARPENTRY, LLC; ALPHA CONSTRUCTION OF SC, LLC; GOOD LUCK INCORPORATED; SOUTH ATLANTIC FRAMING, INC.; SRC CONSTRUCTION, LLC; JALISCO FRAMING, LLC; MENDOZA CONSTRUCTION, LLC; VL CONTRACTOR, LLC; 84 LUMBAR COMPANY, LP; VARANDA CONTRACTING GROUP, INC.; TOMECH, LLC d/b/a FIRM FOUNDATION COASTAL CAROLINAS; VALIM CONSTRUCTION, LLC; RAM CONSTRUCTION SC, LLC; GOLD STAR CONSTRUCTION, LLC; PROBUILD EAST, LLC; ARCHER EXTERIORS, INC; AMERICO ROOFING CONCEPTS, INC.; CONTRACT EXTERIORS, LLC; HOLY CITY EXTERIORS, LLC; SR CONSTRUCTION, LLC; ROBERT HELMS CONSTRUCTION, INC; QUICK ROOFING, LLC; MONARCH COMPANY, LLC; ACCURATE BUILDING COMPANY, LLC; SOUTHEND EXTERIORS, INC.; ABOVE THE SKY ROOFING, INC; ABC SUPPLY CO, INC; SRS

No. 2:23-cv-06797-DCN

**ORDER**

DISTRIBUTION, INC. f/k/a SUPERIOR DISTRIBUTION; CONTRACT LUMBER, INC.; BMC EAST, LLP; USLBM-PROFESSIONAL BUILDERS SUPPLY a/k/a US LBM HOLDINGS, LLC A/K/A US LBM, LLC; SEE HOLDINGS, LLC, d/b/a SOUTHEND EXTERIORS; PROFESSIONAL BUILDERS SUPPLY, LLC d/b/a PROFESSIONAL BUILDERS SUPPLY COMMERCIAL PRSRE-GVL, LLC; and D.R. HORTON, INC.,

Defendants.

---

D.R. HORTON, INC.,

Crossclaim Plaintiff,

vs.

TIP-TOP ROOFING & CONSTRUCTION, LLC; PACIFIC CONTRACTORS, LLC; BUILDERS FIRSTSOURCE – SOUTHEAST GROUP, LLC; CAROLINA CUSTOM CARPENTRY, LLC; QUAD K, LLC; JJL CONSTRUCTION, LLC; CAC CARPENTRY, LLC; ALPHA CONSTRUCTION OF SC, LLC; GOOD LUCK INCORPORATED; SOUTH ATLANTIC FRAMING, INC.; SRC CONSTRUCTION, LLC; JALISCO FRAMING, LLC; MENDOZA CONSTRUCTION, LLC; VL CONTRACTOR, LLC; 8 LUMBER COMPANY, LP; VARANDA CONTRACTING GROUP, INC.; TOMECH, LLC D/B/A FIRM FOUNDATION COSTAL CAROLINA'S; VALIM CONSTRUCTION, LLC; RAM CONSTRUCTION SC, LLC; GOLD STAR CONSTRUCTION, LLC; PROBUILD

EAST, LLC; ARCHER EXTERIORS, )
INC.; AMERICO ROOFING CONCEPTS, )
INC.; CONTRACT EXTERIORS, LLC; )
HOLY CITY EXTERIORS, LLC; )
SR CONSTRUCTION, LLC; ROBERT )
HELMS CONSTRUCTION, INC.; )
QUICK ROOFING, LLC; MONARCH )
COMPANY, LLC; ACCURATE )
BUILDING COMPANY, LLC; )
SOUTHEND EXTERIORS, INC.; )
ABOVE THE SKY ROOFING, INC.; )
ABC SUPPLY CO., INC.; )
SRS DISTRIBUTION, INC. F/K/A )
SUPERIOR DISTRIBUTION; CONTRACT)
LUMBER, INC.; BMC EAST, LP; and )
USLBM-PROFESSIONAL BUILDERS )
SUPPLY A/K/A US LBM HOLDING, )
LLC, )
)
Crossclaim )
Defendants. )
)

This matter is before the court on plaintiffs Michael Vriens and Nicholas Bardsley's (together, "Plaintiffs") motion to reconsider, ECF No. 1139. For the reasons set forth below, the court grants the motion in part and denies the motion in part.

## I. BACKGROUND

The court's February 9, 2026 order (the "February Order") provides a thorough recitation of the factual background and procedural history of this case. See ECF No. 1124 at 2–9. The court fully incorporates the background section of the February Order into this order, including all defined terms.[1]

[1] In light of the court's finding regarding the February Order's applicability to the Upstream Purchasers, see infra pp. 5–6, the court dispenses with the term "Homeowners" and refers to the moving parties simply as "Plaintiffs."

Plaintiffs moved for reconsideration of the court's February Order on March 9, 2026. Defendant D.R. Horton, Inc. ("D.R. Horton") responded in opposition on April 6, 2026, ECF No. 1144, to which Plaintiffs replied on April 20, 2026, ECF No. 1148. Plaintiffs filed a supplement to their reply on May 20, 2026, ECF No. 1154, to which D.R. Horton responded by letter on March 26, 2026, ECF No. 1156. As such, the motion is fully briefed and now ripe for the court's review.

## II. STANDARD[2]

When a district court issues an interlocutory order "'that adjudicates fewer than all of the claims [in a case],' the court retains discretion to revise the order 'at any time before the entry of a judgment adjudicating all the claims.'" Carlson v. Boston Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (quoting Fed. R. Civ. P. 54(b)). In contrast to "motions to reconsider final judgments pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Rule 54(b)'s approach" gives the district court "broader flexibility to revise interlocutory orders" prior to final judgment as "new facts or arguments come to light[ ]" in ongoing litigation. Carlson, 856 F.3d at 325 (emphases in original). "[T]he power to reconsider and modify its interlocutory judgments[ ]" is "committed to the discretion of the district court[.]" Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003) (citations omitted).

[2] The court acknowledges that the February Order provided the standard of review applicable to motions to reconsider a final judgment made pursuant to Federal Rule of Civil Procedure 59(e). ECF No. 1124 at 10–11. Because the February Order was interlocutory, Rule 59(e) was not applicable. In reviewing the instant motion, the court applies the Rule 54(b) standard of review applicable to a motion to reconsider an interlocutory order.

Nevertheless, this discretion is "not limitless[ ]" because courts are constrained to consider their interlocutory rulings "as [the] law of the case." Carlson, 856 F.3d at 325 (citations omitted). "The law-of-the-case doctrine provides that in the interest of finality, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Id. (quoting TFWS, Inc. v. Franchot, 572 F.3d 186, 191 (4th Cir. 2009)). Consequently, a district court "may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) "a subsequent trial produc[ing] substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." Carlson, 856 F.3d at 325 (internal quotation marks and citations omitted). The standard therefore closely resembles the Rule 59(e) standard for motions to reconsider a final judgment but differs in that it permits revision on account of "potentially different evidence discovered during litigation as opposed to the discovery of 'new evidence not available at trial.'" Id. (quoting Pac. Ins. Co. v. Am. Nat. Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998)).

## III. DISCUSSION

### A. Jurisdiction

Plaintiffs first argue that the court lacked jurisdiction over members of an uncertified class and, thus, erred in compelling arbitration "as to the Upstream Purchasers." ECF No. 1124 at 66; see ECF No. 1139-1 at 6–8. The court agrees.

"Federal courts may only adjudicate the rights of putative class members upon certification of that class under Federal Rule of Civil Procedure 23." Partington v. Am. Intern. Spec. Lines Ins. Co., 443 F.3d 334, 340 (4th Cir. 2006); see also Washington v. Finlay, 664 F.2d 913, 928 (4th Cir. 1981) (noting that members of a putative class will

not be legally bound by a judgment against named plaintiffs); Jensen v. Cablevision Sys. Corp., 372 F. Supp. 3d 95, 123 (S.D.N.Y. 2019) (concluding that court could not compel absent putative class members to binding arbitration); Whittington v. Taco Bell of Am., Inc., 2011 WL 1772401, at *7 (D. Colo. May 10, 2011) (same). D.R. Horton points to no authority holding to the contrary, and the court disagrees with its assessment that "the effect of the [February] Order on hypothetical nonparties is not currently before the Court." ECF No. 1144 at 11. Plaintiffs have raised the issue, placing it squarely before the court. ECF No. 1139-1.

No class has been certified in this case, and so, the court finds that it lacked the authority to issue a ruling compelling arbitration as to absent putative class members in the February Order. See ECF No. 1124 at 66; Partington, 443 F.3d at 340. Because the court lacked the authority to compel arbitration as to members of an uncertified class, the court further finds that this was a "clear error" that would cause "manifest injustice[ ]" if left uncorrected. See Carlson, 856 F.3d at 325. The court will therefore amend the February Order to clarify that arbitration is only compelled as to Plaintiff Vriens, the named plaintiff representing the putative Upstream Purchaser subclass.[3]

**B. Arbitration Provision**

**1. Federal Law Controls Severability Analysis**

Next, Plaintiffs argue that the court erred in applying federal law to determine which provisions of the Purchase Agreement constitute the arbitration provision. ECF

[3] As discussed infra pp. 28–29, the court does not alter its prior finding compelling arbitration on an individualized basis. Accordingly, while the court amends the February Order to compel arbitration of only Plaintiff Vriens's claims, the court compels arbitration of his claims on an individualized basis.

No. 1139-1 at 8–9. Plaintiffs do not dispute that the court, pursuant to Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967), is required to sever the precise agreement to arbitrate from the Purchase Agreement and only consider challenges directed at that portion of the Purchase Agreement. Id. at 10. But Plaintiffs do dispute the court's conclusion that federal law governs the analysis of which portions of an agreement constitute the precise agreement to arbitrate. Id. at 12.

Plaintiffs maintain that an inquiry into the "scope" of an arbitration provision asks whether the arbitration provision covers the underlying dispute at hand. Id. at 9–10. They further maintain that the "scope" inquiry does not ask whether certain provisions of an underlying agreement form part of the arbitration provision—i.e., which provisions of the underlying agreement are severable pursuant to Prima Paint. Id. at 11. In their view, the former inquiry is governed by federal law while the latter is a matter of state law. Id. at 12. Plaintiffs submit that the court erred in conflating these two concepts, which resulted in the court failing to apply the South Carolina Supreme Court's decision in Smith v. D.R. Horton, 790 S.E. 1 (S.C. 2016) to determine which provisions of the Purchase Agreement constitute the arbitration provision. Id. Plaintiffs assert that, had the court applied Smith, it would have then addressed Plaintiffs' unconscionability challenges directed at Section 14 of the Purchase Agreement. See id.

Plaintiffs attribute the confusion to South Carolina appellate opinions using the word "scope" when conducting a severability analysis on agreements governed by the FAA. Id. at 9–11 (citing Damico v. Lennar Carolinas, LLC, 879 S.E.2d 746, 608–09 (S.C. 2022)). Plaintiffs also cite to cases where the Fourth Circuit has used the word "scope" in determining whether an arbitration provision covered the parties' underlying

dispute. ECF No. 1139-1 at 10; (first citing Levin v. Alms & Assocs., Inc., 634 F.3d 260, 269 (4th Cir. 2011); then citing Mey v. DIRECTV, LLC, 971 F.3d 284, 286 (4th Cir. 2020)).

In opposition, D.R. Horton contends that "Plaintiffs read too much into the [February] Order's use of the word 'scope.'" ECF No. 1144 at 5. Because the Prima Paint rule derives from a federal statute, it contends the court did not err in applying federal precedent to determine which provisions were severable from the Purchase Agreement and thus properly subject to pre-arbitration enforceability challenges. Id. at 6.

Because the court's use of the word "scope" has caused confusion, the court will first clarify the limits Prima Paint places on the types of pre-arbitration enforceability challenges the court can entertain. The court can consider challenges that are "directed specifically to the agreement to arbitrate . . . ." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 72 (2010) (citing Prima Paint, 388 U.S. at 403–04). The court cannot consider challenges directed at the "at the contract as a whole, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006) ("[T]he statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally." (citing Prima Paint, 546 U.S. at 403–04)). Thus, the relevant inquiry, whatever the term ascribed to it, is simply whether a pre-arbitration enforceability challenge is directed at the "contract generally[ ]" or at the "arbitration clause itself." Buckeye, 546 U.S. at 445. Addressing the role of state law in this analysis, the Supreme Court has expressly "rejected the view that the question of 'severability' was one of state

law, so that if state law held the arbitration provision not to be a severable[,] a challenge to the contract as a whole would be decided by the court." Id. (citing Prima Paint, 546 U.S. at 402–03).

Still, Plaintiffs contend that three Fourth Circuit cases establish that state law governs whether a particular contract provision is subject to pre-arbitration challenge. ECF No. 1139-1 at 12–17. The court addresses those cases in turn.

Plaintiffs first point the court to Johnson v. Cont'l Fin. Co., 131 F.4th 169 (4th Cir. 2025). Plaintiffs submit that the Johnson court "considered a clause located outside of the section titled 'arbitration provision' to be part of the parties' agreement to arbitrate because the outside clause—there, a change-in-terms clause—clearly applied to the arbitration clause."[4] ECF No. 1139-1 at 13 (citing Johnson, 131 F.4th at 179). Because the Johnson court applied Maryland law in reaching the conclusion that it could properly consider the change-in-terms clause, Plaintiffs submit that the court should apply South Carolina law to determine whether Section 14 is subject pre-arbitration enforcement challenges. ECF No. 1139-1 at 13.

D.R. Horton argues that Johnson was a case about contract formation—not severability—and therefore does not establish that state law controls the analysis of

[4] The change-in-terms clause allowed the defendant to "unilaterally alter any term in the agreement at its 'sole discretion.'" Johnson, 131 F.4th at 174.

whether a contractual provision is subject to pre-arbitration enforceability challenges.[5] ECF No. 1144 at 12–15. The court agrees with D.R. Horton.

The challenge lodged in Johnson went to the "threshold issue of contract formation"—not whether a properly formed contract was enforceable. 131 F.4th at 175. Because the dispute in Johnson was one of contract formation, the court reasoned that Section 4 of the FAA—and "the fundamental principle that arbitration is a matter of contract" reflected therein—permitted the district court to first determine whether the contract containing the arbitration provision "was properly formed." Id. The defendant argued that the "severability principle" established under Prima Paint and Buckeye required "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause[ ]" to go to the arbitrator. Id. (quoting Buckeye, 546 U.S. at 449). The Johnson court rejected this argument, holding that the "severability doctrine established in those cases plainly applies to 'a challenge to the validity of [a] contract,' not a challenge to its formation." Johnson, 131 F.3d at 176 (emphases in original). Underscoring this conclusion was the Supreme Court's opinion in Granite Rock Co. v. International Brotherhood of Teamsters, 561 U.S. 287 (2010), which "emphasized that 'where the dispute at issue concerns contract formation, the dispute is generally for the

[5] Plaintiffs argue in reply that "[D.R.] Horton does not challenge that Johnson allowed the court to look to outside clauses when analyzing the arbitration agreement." ECF No. 1148 at 11. D.R. Horton, however, does assert that the court cannot do so when considering enforceability challenges. ECF No. 1144 at 14–15.

courts to decide.'" Johnson, 131 F.4th at 177 (quoting Granite Rock Co., 561 U.S. at 296).

After rejecting the severability principle's applicability, the court turned to Maryland law to resolve the formation question of whether the contract was illusory due to a change-in-terms clause. Id. at 178. The court applied state law because formation is "a question of ordinary state law contract principles." Id. (quotation marks and citation omitted). The defendant argued that a Maryland Supreme Court decision constrained the court to review only the "four corners" of the arbitration agreement when evaluating the illusoriness challenge, thereby precluding the court from considering the change-in-terms clause. Id. at 179 (citing Cheek v. United Healthcare of Mid-Atlantic, Inc., 835 A.2d 656 (Md. 2003)). The court disagreed, reasoning that Maryland law did not "artificially limit[ ]" its review to only those contract terms appearing under an "arbitration provision" heading. Johnson, 131 F.4th at 179. Rather, because Maryland law favored reading the "contract as a whole[,]" the court determined that it could consider a provision beyond the four corners of the arbitration agreement, like the change-in-terms clause, so long as it applied to the arbitration agreement. Id.

The court takes three conclusions from its review of Johnson that are relevant here. First, the decision does not establish that state law governs the severability analysis; indeed, the court makes clear that Prima Paint's rule of severability was not implicated when contract formation was at issue. See Johnson, 131 F.4th at 175–78. Second, the court made clear that the severability doctrine would apply in the case of challenges to the validity, or enforceability, of a properly formed contract. Id. at 176. Third, the court considered the change-in-terms clause despite it being beyond the four

corners of the arbitration agreement because it was addressing an issue of contract formation, which in turn required the court to apply Maryland law—not federal law—to resolve that issue. Id. at 178. As such, the case does not demonstrate, as Plaintiffs suggest, that state law applies in deciding whether an enforceability challenge is properly directed at the precise agreement to arbitrate.

The next case Plaintiffs rely on is Coady v. Nationwide Motor Sales Corp., 32 F.4th 288 (4th Cir. 2022).[6] ECF No. 1139-1 at 14–15. There, just as in Johnson, the court held that that a modification clause rendered a promise to arbitrate illusory, and so, the parties' arbitration agreement failed for lack of consideration under Maryland law.[7] Id. at 292–93. The court recognized that state law principles of contract formation applied, as the question was whether "a valid [arbitration] agreement exists." Id. at 291. The modification clause was not found in the arbitration agreement itself, and the court recognized that Maryland's "four corners" rule could be construed to preclude consideration of the modification clause. Id. at 291–92. The court ultimately concluded, however, that Maryland law allowed it to consider the modification clause because the clause applied to the arbitration agreement and because the plaintiff assented to the arbitration agreement by signing the document containing the modification clause. Id. at 292 (citing Schneider Elec. Bldgs. Critical Sys., Inc. v. W. Sur. Co., 165 A.3d 485, 490 (Md. 2017)). Coady did not discuss the federal rule of severability, nor did it cite Prima Paint or any of its progeny. See Coady, 32 F.4th at 289–93 As such, Coady does not

[6] D.R. Horton argues that Plaintiffs reliance on Coady is misplaced because, like Johnson, the case concerns contract formation. ECF No. 1144 at 14.

[7] The modification clause permitted the defendant to "change, abolish, or modify" the terms of an employee handbook containing the parties' arbitration agreement. Coady, 32 F.4th at 291.

stand for the proposition that state law governs whether a pre-arbitration enforceability challenge is properly directed at the precise agreement to arbitrate. See id. The court only determined which parts of the contract were subject to a pre-arbitration formation challenge because principles of Maryland contract law required that analysis. See id. at 291.

Finally, Plaintiffs ask the court to consider the Fourth Circuit's per curiam affirmance of an order denying a motion to compel arbitration issued by a district court in Maryland.[8] Ford v. Genesis Fin. Sols., Inc., 2025 WL 1540933, at *1 (4th Cir. May 30, 2025). The Fourth Circuit's opinion contains no reasoning, see id., but the district court's order concerned the same issue presented in Coady and Johnson—whether, under Maryland law, an agreement to arbitrate failed for lack of consideration because of a modification clause found outside the arbitration agreement itself. See Ford v. Genesis Fin. Sols., Inc., 726 F. Supp. 3d 441, 448–460 (D. Md. 2024). The district court found that Maryland law permitted it to consider the modification clause and concluded the clause made the arbitration provision illusory. See id. at 451–46. The court was not conducting a severability analysis pursuant to Prima Paint, and the decision provides no support for state law governing that analysis. See id. at 448–60.

Again, the Supreme Court has "rejected the view that question of severability" under Prima Paint "was one of state law[.]" Buckeye, 440 U.S. at 445. Having considered the three cases cited by Plaintiffs, the court finds no basis to disregard this clear statement of the law. The court therefore concludes that it did not commit a "clear

[8] D.R. Horton argues that Ford cannot support Plaintiffs' position because, like Johnson and Coady, the case concerns contract formation. ECF No. 1144 at 14.

error causing manifest injustice" in applying binding federal precedent when determining which of Plaintiffs challenges were properly directed at the precise agreement to arbitrate. See Carlson, 856 F.3d at 325.

**2. Plaintiffs' Other Arguments Regarding Severability**

Plaintiffs also contend that Rent-A-Center permits the court to consider challenges to contractual provisions outside the precise agreement to arbitrate if the outside provision is applicable to the arbitration provision and renders unconscionable results in arbitration. ECF No. 1139-1 at 16 (citing Rent-A-Center, 561 U.S. at 73–74). D.R. Horton responds that Rent-A-Center held that "if the plaintiff had argued 'common procedures as applied to [a] delegation provision rendered that provision unconscionable,' it may have been possible for a court to consider that challenge."[9] ECF No. 1144 at 12 n.3 (quoting Rent-A-Center, 561 U.S. at 74) (alteration added) (emphases in original).

Rent-A-Center concerned a standalone arbitration agreement that, in addition to mandating arbitration of the parties' underlying dispute, contained a delegation clause mandating arbitration of disputes over whether the underlying dispute was arbitrable. Rent-A-Center, 561 U.S. at 68–69. The Rent-A-Center plaintiff argued a fee-splitting arrangement and discovery limitations were unconscionable when those limitations were applicable in either an arbitration of the underlying claim or an arbitration pursuant to the delegation clause. Id. at 74. Because the plaintiff was challenging the enforceability of

[9] Plaintiffs reply that the preceding quote from D.R. Horton's brief constitutes a concession that Rent-A-Center permits challenges to provisions outside the "formulaic arbitration clause" when that challenged provision applies arbitration clause and renders it unconscionable. ECF No. 1148 at 4. The court does not find D.R. Horton to have conceded this point.

the delegation provision specifically, the Court reasoned that, pursuant to Prima Paint's rule of severability, the plaintiff would have to argue that the allegedly unconscionable terms would be unconscionable in an arbitration concerning arbitrability. Id. This was a "much more difficult argument to sustain" than arguing the same terms as applied to the underlying "factbound" employment claim were unconscionable. Id. So, Rent-A-Center holds that—in the case of an arbitration agreement that makes allegedly unconscionable terms applicable to both an arbitration of the underlying claim and an arbitration over that claim's arbitrability—a plaintiff challenging a delegation clause must show that those terms would be unconscionable as applied to an arbitration concerning issues of arbitrability. See id. At the same time, the applicability of allegedly unconscionable terms to both the arbitration agreement and the delegation clause does not preclude a court's review of that challenge, provided that a challenge to the delegation clause is properly lodged. Id.

Prior to reaching this conclusion, the Rent-A-Center Court noted that [i]n some cases the claimed basis of invalidity for the contract as a whole will be much easier to establish than the same basis as applied only to the severable agreement to arbitrate." Id. at 71. "Thus," the Court continued, "in an employment contract many elements of alleged unconscionability applicable to the entire contract (outrageously low wages, for example) would not affect the agreement to arbitrate alone." Id. And even in the case of "alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract" the Court reiterated the requirement that "the basis of [the] challenge . . . be directed specifically to the agreement to arbitrate before the court will intervene." Id. Put differently, the Court reaffirmed the rule stated in Buckeye that

challenges to the "contract generally[ ]" are not subject to pre-arbitration judicial review. See 546 U.S. at 445; Rent-A-Center, 561 U.S. at 71.

Next, Plaintiffs contend that the Supreme Court's decision in Coinbase, Inc. v. Suski, 602 U.S. 143 (2024) confirms their reading of Rent-A-Center. ECF No. 1139-1 at 16. Plaintiffs quote the following language from Coinbase:

> The severability principle establishes that a party seeking to avoid arbitration must directly challenge the arbitration or delegation clause, not just the contract as a whole. But this rule does not require that a party challenge only the arbitration or delegation provision. Rather, where a challenge applies "equally" to the whole contract and to an arbitration or delegation provision, a court must address that challenge. [citing Rent-A-Center, 561 U.S. at 71.] Again, basic principles of contract and consent require that result. Arbitration and delegation agreements are simply contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute.

Coinbase, 602 U.S. at 150–51 (2024) (emphasis in original). Based on the foregoing, Plaintiffs contend that a pre-arbitration enforceability challenge to a provision outside the arbitration provision can be considered so long as the challenger argues that the outside provision renders an unconscionable result when applied to the contemplated arbitration. See ECF Nos. 1139-1 at 16, 1148 at 6–7.

The court first notes that language quoted from Coinbase appears to be directed at resolving a circuit split that had developed after Rent-A-Center over whether a party challenging a delegation clause is required to challenge the delegation clause on a separate basis than that used to challenge the arbitration agreement. See Bielski v. Coinbase, Inc., 87 F.4th 1003, 1009–11 (9th Cir. 2023) (discussing circuit split and

deciding that a challenger need not challenge the delegation provision on a separate basis from the arbitration agreement).

As to the question of whether Coinbase overruled Buckeye and Rent-A-Center's holdings that a challenge "to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator[,]" the court is not convinced that Coinbase went so far. See Buckeye, 546 U.S. at 448–49 (observing that the "Prima Paint rule permits a court to enforce an arbitration agreement in a contract the arbitrator later finds to be void."); Rent-A-Center, 561 U.S. at 71.

Consider first the Fourth Circuit's opinion in Meadows v. Cebridge Acquisition, LLC, 132 F.4th 716, 729 (4th Cir. 2025), decided after Coinbase, where it considered whether "limitation of liability" paragraphs and a "limitation on punitive damages" in a contract were subject to pre-arbitration enforceability challenges. See ECF No. 1124 at 25–30 (citing Meadows, 132 F.4th at 729, 739). The court determined the alleged unconscionability of these liability limitations was for the arbitrator to decide because those limitations would apply in any forum. Meadows, 132 F.4th at 729 (first citing Buckeye, 546 U.S. at 445–46; then citing Muriithi v. Shuttle Exp., Inc., 712 F.3d 173, 183–84 (4th Cir. 2013)); see also ECF No. 1124 at 25–28. The Meadows court considered itself bound by Buckeye's formulation of the severability rule despite quoting Coinbase on the previous page of the opinion. Meadows, 132 F.4th at 728–29 (quoting Coinbase, 602 U.S. at 148). Because the Fourth Circuit did not deem Coinbase to overrule Buckeye or Rent-A-Center, this court declines to reach that conclusion here.

Furthermore, if the Supreme Court intended to overrule limitations placed on pre-arbitration enforceability challenges in Buckeye and Rent-A-Center, this court would

expect the Supreme Court to do so clearly. See Stop Reckless Econ. Instability Caused by Democrats v. Fed. Election Comm'n, 814 F.3d 221, 230 (4th Cir. 2016) ("[E]ven were we to conclude that the Supreme Court has actually sub silentio excused compliance with the rule . . . , we would be obligated to follow the rule that the Court has actually articulated."); see also Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 18 (2000) ("This court does not normally limit, or so dramatically limit, earlier authority sub silentio."). As such, the court will not allow Plaintiffs to lodge a pre-arbitration enforceability challenge based on Section 14 of the Purchase Agreement "as applied" to Section 15. To permit this challenge would not only contradict Meadows, but it would also render the severability principle largely meaningless, as the terms of contracting parties' underlying agreements will largely be applicable in arbitration proceedings concerning the underlying agreement. See Buckeye, 546 U.S. at 448 (concluding that Prima Paint permits the enforcement of an arbitration agreement that an arbitrator may later "find[ ] to be void.").

Plaintiffs also cite to Hengle v. Treppa, 19 F.4th 324 (4th Cir. 2021) to establish that the court may consider challenges to limitations outside the arbitration provision itself if applying that limitation to the arbitration provision would render it unconscionable. ECF No. 1139-1 at 18. The court does not adopt this reading of Hengle. The court in Hengle confirms what was held in Rent-A-Center: that a party "may contest the enforceability of the delegation clause with the same arguments it employs to contest

the enforceability of the overall arbitration agreement." Hengle, 19 F.4th at 335. Hengle does not allow the type of "as applied" challenge that Plaintiffs envision. See id.

For clarity, the court now addresses Plaintiffs' assessment that they have not sought "to invalidate the arbitration agreement based upon challenges to the Purchase Agreement as a whole[,]" nor are they asking the court "to incorporate the entirety of the Purchase Agreement into Section 15's arbitration clause for the purpose of its unconscionability analysis, as discussed in the February Order." ECF No. 1139-1 at 20. In the February Order, the court rejected Plaintiffs' argument that Section 15 could be read as incorporating Section 14, such that the court could consider a pre-arbitration challenge directed at Section 14, in part, because following the argument to its logical end brought about untenable results. ECF No. 1124 at 29–30. The court did not consider Plaintiffs to argue that the entire contract was incorporated into the arbitration provision; it simply reasoned that this was the logical result of its incorporation argument. Id. at 29. Again, Section 15 provides that "Purchaser and Seller shall submit to binding arbitration any and all disputes which may arise between them regarding this agreement . . . including but not limited to any disputes regarding: . . . the limited warranty pursuant to section 14 above." ECF No. 42-2 at 6 (emphasis added). This language refers to both the Purchase Agreement and Section 14's limited warranty to clarify that the arbitration mandate applies to any and all disputes regarding the Purchase Agreement—whether the dispute concerns Section 14 or any other Section of the Purchase Agreement. Id. Because Section 15 references the Purchase Agreement and Section 14 for the same purpose, the court could not see how, under Plaintiffs' argument, the reference to Section 14 would make that provision severable without the reference to the Purchase Agreement

also making the entire agreement severable. See ECF No. 1124 at 29. As such, the court considered Plaintiffs' incorporation argument to be an untenable application of the severability principle.

To the extent Plaintiffs attempt to recast their unconscionability challenge as formation challenge, the court rejects that attempt as well. Plaintiffs cite to a portion of their prior briefing that noted—absent incorporating Section 14 into Section 15—Section 15 would alternatively fail for inadequate terms. Id. (citing ECF No. 42-1 at 19–20). The court cannot discern from Plaintiffs' briefing what principle of state contract law or federal arbitration law would deem an arbitration provision to "fail[ ]" because the provision does not contain additional terms related to the amount of recoverable damages. See ECF No. 42-1 at 20.

Plaintiffs further argue that "[i]t is simply incorrect to say that such a provision does not concern the parties' rights in arbitration when arbitration is the only forum available to Plaintiff to seek damages after closing under both Horton's and this Court's reading of the Purchase Agreement[.]" ECF No. 1139-1 at 21. The problem with this argument—addressed in the February Order—is that although the damages limitations may apply in arbitration, they would also apply in any other forum. ECF No. 1124 at 27–28 (citing Meadows v. Cebridge Acquisition, LLC, 132 F.4th 716, 729 (4th Cir. 2025); Muriithi v. Shuttle Exp., Inc., 712 F.3d 173, 183–84 (4th Cir. 2013); Syndor v. Conesco Fin. Servicing Corp., 252 F.3d 302, 307 (4th Cir. 2001)). Because the limitations on damages apply in any forum, a challenge to those limitations goes to the contract as a whole. ECF No. 1124 at 27–28 (citing Fourth Circuit cases reaching the same conclusion). For that reason, among others, the court declined to consider enforceability

challenges directed at Section 14 of the Purchase Agreement, as binding precedent constrained the court in this regard.[10]

Finally, Plaintiffs take issue with the court's analysis of Sections 4 and 16 in its unconscionability analysis. ECF No. 1139-1 at 22–23. The court found that its consideration of those Sections did not offend the severability principle because Section 15 excepted disputes pertaining to those provisions from its arbitration mandate. ECF No. 1124 at 39 n.11. To fully address Plaintiffs' challenges to those exceptions, the court analyzed Sections 4 and 16 to determine what circumstances would trigger Section 15's exceptions to the arbitration mandate. Id. at 35–39. Whether the circumstances in which a party is not obligated to arbitrate are sufficiently related to arbitration to allow the court to consider those challenges is a question the court need not answer. The court found that the exceptions were not unconscionable and, additionally, that even if the court strictly limited its analysis to Section 15, it was not unconscionable. Id. at 35–39 & n.11. Accordingly, the court will not revisit its conclusion that Section 15 of the Purchase Agreement is not unconscionable.

In sum, the court finds that Plaintiffs have failed to establish that the court committed a "clear error causing manifest injustice[ ]" in applying federal law to determine whether their enforceability challenges were properly directed at the precise agreement to arbitrate. See Carlson, 856 F.3d at 325. The court further finds that it did

[10] While the court finds that Section 14 is not subject to pre-arbitration enforcement challenges, the court rejects Plaintiffs' suggestion that an arbitrator could enforce a damages limitation if that limitation violated applicable law. See ECF No. 1139-1 at 22.

not err in failing to consider whether Section 14 was unconscionable "as applied" to Section 15.

**C. Contrary Intent Exception**

Next, Plaintiffs challenge the court's finding that D.R. Horton showed by clear and convincing evidence that the parties intended for the arbitration provision to survive closing. ECF No. 1139-1 at 24–30. D.R. Horton argued that a number of Sections in the Purchase Agreement showed that the parties did not intend for Section 15 to merge into the deed at closing. ECF No. 50 at 8–9 (citing Sections 14, 15, and 18 of the Purchase Agreement).

The court first addresses the authorities Plaintiffs cite for the first time in their motion for reconsideration. The court does not find their citations to federal cases applying the clear and convincing evidence standard to "inequitable conduct" claims in the patent law context to be instructive as to the application of that standard to an issue of state property law.[11] Nor does the court find Plaintiffs' citation to Davis v. KB Home of S.C., Inc., 713 S.E.2d 799, 806 (S.C. Ct. App. 2011) for the proposition, in their own words, that "South Carolina's merger doctrine applies equally to all contracts[,]" to be instructive, as that case dealt with a "merger clause" in an employment agreement that

[11] See ECF No. 1139-1 at 24–25 (citing Pure Fishing, Inc. v. Normark Corp., 2013 WL 12156251, at *3 (D.S.C. Aug. 14, 2013); Therasense, Inc. v. Becton Dickinson & Co., 649 F.3d 1276 (Fed. Cir. 2011); Asghari-Kamrani v. United Servs. Auto. Ass'n, 252 F. Supp. 3d 562, 572 (E.D. Va. 2017), aff'd 737 F. Appx. 542 (Fed. Cir. 2018)).

prevented consideration of a previously executed arbitration agreement under the parol evidence rule.

Rather, the court considers the South Carolina precedents applying the contrary intent exception to the merger by deed doctrine—cited in the February Order—to be most instructive as to whether the clear and convincing evidence threshold was met in the instant case. Regarding Plaintiffs' objections to the court's conclusion drawn from those precedents, they raise nothing more than reasonable grounds for disagreement. Given the dearth of South Carolina precedents applying the contrary intent exception and, as is often the case, the absence of any case perfectly analogous to the facts of this case, it is unsurprising that Plaintiffs are able to raise grounds for disagreement with respect to the court's conclusion on an arcane issue of state property law. As Plaintiffs have identified no authority indicating that the court committed a "clear error" that would cause "manifest injustice[,]" the court sees no occasion to revisit its prior finding regarding the contrary intent exception.[12] See Carlson, 856 F.3d at 325.

Plaintiffs further argue that Section 14 of the Purchase Agreement "may qualify for the contrary intent exception to the merger doctrine, [but] not Section 15." ECF No. 1139-1 at 27. The court does not consider Plaintiffs' submission of Section 14 as a stronger candidate for the contrary intent exception to provide a compelling reason for the court to revisit its prior finding regarding the exception's applicability to Section 15.

Plaintiffs next argue that the court erred in in relying on the phrase "delivery of the home" in Section 15 as evidence of a contrary intent for Section 15 to survive closing.

[12] As D.R. Horton notes, Plaintiffs have not identified any precedent indicating that that the contrary intent exception requires express language of survival. ECF No. 1144 at 8 n.1.

ECF No. 1139-1 at 27–28. Section 15 provides that "Purchaser and Seller shall submit to binding arbitration any and all disputes which may arise, including but not limited to any disputes regarding: (A) Seller's construction and delivery of the home[ ] . . . ." ECF No. 42-2 at 6. In the February Order, the court found this language to be indicative of a contrary intent because Section 16 of the Purchase Agreement provides that "possession of the Property will not be delivered until closing is complete." Id.; ECF No. 1124 at 41. Specifically, the court determined that the arbitration provision included disputes that could only arise on or after the date closing, which showed that Section 15 was intended to survive closing. ECF No. 1124 at 41. Plaintiffs now point out that certain disputes—like those relating to the timing of delivery or failure to deliver the home—could "regard[ ]" the delivery of the home and also precede closing. ECF Nos. 42-2 at 6, 1139-1 at 27–28. The court acknowledges this point, but the applicability of the arbitration mandate to disputes arising before and after closing does not foreclose application of the contrary intent exception. And even without resort to Section 16, the arbitration mandate is expansive, as it requires arbitration of "any and all disputes which may arise between [the parties] regarding this agreement and/or the property[.]"[13] ECF No. 42-2 at 6; see also ECF No. 1124 at 41–42 (citing Carlson v. S.C. State Plastering, LLC, 743 S.E.2d 868 (S.C. Ct. App. 2013) (holding clear and convincing evidence threshold to be met, in

[13] To the extent that Plaintiffs suggest the court offended the severability principle by considering Sections 4 and 16 of the Purchase Agreement in this analysis, the court disagrees. ECF No. 1139-1 at 25–26. The severability rule requires that Plaintiffs' challenge be directed to the precise agreement to arbitrate; it does not constrain the court to consider that challenge without looking to additional terms that provide relevant context as to the timing of certain events contemplated under the Purchase Agreement. See Bielski, 87 F.4th at 1011–12 (approving of district court's consideration of "parts of the agreement that impacted the delegation provision to decide its enforceability[ ]" when challenge was properly directed at the delegation provision).

part, because contract required that "[a]fter closing, every controversy or claim arising out of or relating to this Agreement . . . shall be settled by binding arbitration.") (alterations in original)).

Plaintiffs next assert the court erred in failing to apply the doctrine of contra preferentum in its analysis of the contrary intent exception, as "neither Horton nor the Court have asserted that [the doctrine] does not apply to the merger doctrine." See ECF No. 1139-1 at 28. The court finds Plaintiffs' citation to a case applying contra preferentum in the context of contract containing a merger clause to be an insufficient basis for the court to revisit the February Order's finding. See id. (citing Coleman v. Mariner Health Care, Inc., 755 S.E.2d 450, 455 (S.C. 2014)). The court also rejects Plaintiffs' related contention that the D.R. Horton's ability to insert a survival clause into Section 15, as the drafter of the Purchase Agreement, somehow forecloses the applicability of the contrary intent exception. ECF No. 1139 at 26–27.

The court's conclusion regarding the applicability of the contrary intent exception rests on Section 15's all-encompassing, forward looking arbitration mandate. Specifically, Section 15's arbitration mandate applies to "any and all disputes which may arise" between the parties and encompasses disputes that could arise after closing. ECF No. 42-2 at 6–7. While Plaintiffs may disagree with the court's finding, they have failed to demonstrate that the court committed a clear error of law in applying the contrary intent exception. See Carlson, 856 F.3d at 325. Accordingly, the court declines to revisit

the February Order's conclusion that the contrary intent exception applies to Section 15 of the Purchase Agreement.

**D. Class Action Arbitrability**

Finally, Plaintiffs take issue with the court declining to consider the American Arbitration Association[14] Supplementary Rules for Class Arbitrations (the "AAA Class Action Rules") in the February Order. ECF No. 1139-1 at 30–31. The court observed in the February Order that Plaintiffs did not identify any supplemental class action arbitration rules in their supplemental briefing specifically submitted on the issue of whether class action arbitration was permitted under the Purchase Agreement. See ECF Nos. 1074, 1124 at 57–58, 63. Plaintiffs now point out that in the thirty-eighth footnote of their first motion for reconsideration, they stated "[a]t best for [D.R.] Horton, the reference to the AAA rules in the purchaser contracts delegates this issue to the Arbiter, as the AAA has its own class action rules." ECF Nos. 1022-1 at 41 n.38, 1139 at 30–31. Because of this footnote, Plaintiffs argue the court "should have considered the AAA supplemental class arbitration rules in its analysis." ECF No. 1139-1 at 31. Plaintiffs now cite to Rule 3 the AAA Class Action Rules, which provides that

> [u]pon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award").

---

[14] The court refers to the American Arbitration Association as "AAA."

Rule 3, AAA Class Action Rules.

D.R. Horton responds that "[t]he supplemental rules are noticeably absent from Plaintiffs' substantive discussion of the issue and cannot be considered now." ECF No. 1144 at 10.

Even when considering the AAA Class Action Rules, the court finds they are not a sufficient basis to conclude the parties clearly and unmistakably intended for an arbitrator to decide whether class action arbitration is permitted. See Del Webb Cmties., Inc v. Carslon, 817 F.3d 867, 876–77 (holding that the class action arbitrability question is a gateway question of arbitrability and thus presumptively left for the court to decide absent "clear[ ] and unmistakabl[e]" evidence otherwise).

The court identified and discussed the circuit split on this issue in the February Order. ECF No. 1124 at 60–62. In short, some circuits recognize that incorporation by reference is well-established doctrine of contract law and hold that a contract's incorporation of AAA rules, and those rules' incorporation of supplemental rules permitting the arbitrator to decide whether class action arbitration is permitted, constitute clear and unmistakable evidence of an intent to delegate the class action arbitrability decision to the arbitrator. Wells Fargo Advisors, LLC v. Sappington, 884 F.3d 392, 396–99 (2d Cir. 2018); Spirit Airlines, Inc. v. Maizes, 899 F.3d 1230, 1234–36 (11th Cir. 2018). Other circuits consider a chain of cross-references—from the contract, to the AAA rules, and then to supplemental class action rules—to be ambiguous as to whether the parties intended for an arbitrator to decide whether class action arbitration is permitted. Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 809 F.3d 746, 761–63 (3rd Cir. 2016); Catamaran Corp. v. Towncrest Pharm., 864 F.3d 966, 970–973 (8th

Cir. 2017); Reed-Elsevier ex rel. LexisNexis Div. v. Crockett, 734 F.3d 594, 599–600 (6th Cir. 2013). Additionally, a district court in this circuit has reached that same conclusion. Chesapeake Appalachia, LLC v. Suppa, 91 F. Supp. 3d 853, 862–64. (N.D. W.Va. 2015).

As the court noted in the February Order, the Fourth Circuit has yet to directly address the question of whether the incorporation of AAA rules, and those rules' incorporation of supplemental class actions rules, provide a sufficient basis to conclude that the parties clearly and unmistakably delegated the class action arbitrability question to the arbitrator. See Del Webb, 817 F.3d at 869–77. However, the Del Webb court did conclude that an agreement incorporating AAA rules "did not unmistakably provide that the arbitrator would decide whether their agreement authorizes class arbitration." Id. at 869, 877. Indeed, the court stated that the "agreement says nothing at all about the subject." Id. at 877. While the Fourth Circuit could take a different view when presented with arguments directly addressing the incorporation by reference issue, this court will follow Del Webb and concludes that, even when considering the AAA rules' incorporation of supplemental class action rules, Section 15 "says nothing at all about the subject[ ]" of class action arbitration and, thus, fails to "unmistakably provide that the arbitrator" will "decide whether their agreement authorizes class arbitration." See id.; see also Suppa, 91 F. Supp. 3d at 862–64. As such, the question of class action arbitrability is one for the court to decide. See Del Webb, 817 F.3d at 876–77. For that reason, the

court's prior finding that the Purchase Agreement does not authorize class action arbitration remains in effect. ECF No. 1124 at 64–65.

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** Plaintiffs' request to reconsider the February Order's grant of D.R. Horton's motion to compel arbitration and stay proceedings "as to the Upstream Purchasers." The court therefore **AMENDS** the February Order to only compel arbitration and stay proceedings as to the named plaintiff representing the putative class of Upstream Purchasers, Plaintiff Vriens. The court's grant of D.R. Horton's motion to compel arbitration on an individualized basis remains in effect as to Plaintiff Vriens. The court **DENIES** all other requests for relief in Plaintiffs' motion to reconsider.

**AND IT IS SO ORDERED.**



**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 4, 2026**
**Charleston, South Carolina**